IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CARNETHEA NOAH                                                                                           PLAINTIFF

V.                                                                   CIVIL ACTION NO.: 3:09-CV-594-DPJ-FKB

COMMUNITY PLACE and
ANNE-MICHELLE DANIEL                                                                             DEFENDANTS

### MEMORANDUM OPINION & ORDER

This employment-discrimination case is before the Court on Defendants' Motion for Summary Judgment [73], Motion in Limine [95], and Motion to Strike [100].  Because Plaintiff Carnethea Noah has created no genuine issue of material fact with respect to her intentional infliction of emotional distress and Title VII claims, the Court finds that summary judgment should be granted as to those claims.  The Court declines to exercise supplemental jurisdiction over the remaining state-law claims and dismisses those without prejudice.  Defendants' remaining motions are moot.

I.      Facts and Procedural History

In Mississippi, nursing home administrators are required to be licensed, and the Mississippi State Board of Nursing Home Administrators (the Board) is charged with issuing such licenses.  Miss. Code. Ann. § 73-17-3 (2007).  Among other requirements, administrator candidates must complete a full-time, six-month nursing home administrator-in-training (A.I.T.) program under the supervision and direction of a Board-certified preceptor in a licensed nursing home in the State.  Miss. Admin. Code § 30-18-2:12 (2007).  In 2007, Noah, a black female, approached Anne-Michelle Daniel, a white female and certified preceptor, who was Administrator of Defendant Community Place and asked Ms. Daniel to serve as her preceptor.

The two executed a standard A.I.T./Preceptor Agreement form, which was then submitted to the Board.  The Board admitted Noah to the A.I.T. program in July 2007, and Noah began training at Community Place in November.

In February 2008, Daniel terminated Noah's training—two months shy of the six-month requirement.  Daniel subsequently sent a letter to the Board explaining the reasons for the termination.  According to Community Place, the training was discontinued for Noah's failure to complete assigned tasks; complaints from other employees (including African-American workers); and Noah's refusal to perform tasks she deemed "lower level."

Though Noah eventually resumed training under a new preceptor at a new facility, the Board determined that her training at Community Place could "not be credited toward completion of the A.I.T. Program."  Pl.'s Resp. [88] Ex. N, Board Letter 1.  Ultimately, the Board determined that Noah "failed to complete the Administrator-in-Training Program as required," but permitted Noah to "begin a new six month Program."  Defs.' Mot. Summ J. [73] Ex. 22, Board Final Order 1–2, 3.

Aggrieved, Noah exhausted administrative remedies and filed suit against Daniel and Community Place for race discrimination, in violation of Title VII of the Civil Rights Act of 1964.  Noah also asserted state-law claims against Community Place and Daniel for negligence, gross negligence, wrongful termination, negligent infliction of emotional distress, and intentional infliction of emotional distress (IIED).  Pl.'s Comp. [1] at 6.  Noah brought no claims against the Board, although some of her complaints appear to be aimed in its direction.  In response to Daniel's Motion to Dismiss [24], Noah conceded dismissal of all state-law claims against Daniel except her IIED claim.  *See* Order [87] Oct. 18, 2010.  Thus, the IIED claim is the only remaining claim against Daniel.   Community Place and Daniel moved for summary judgment

on all remaining claims. After fully considering the parties' arguments and the applicable law, the Court is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

    A.    Noah's Employment Status

The parties argue whether Noah was a volunteer at Community Place or an employee entitled to Title VII protection. They offer differing record evidence to support their positions. They fail, however, to apply their arguments and evidence to any legal standard and cite no authority. The Court's own review suggests that the hybrid economic-realities/common-law-control test would apply to determine whether an employer-employee relationship existed. *See Diggs v. Harris Hosp.–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) (citing *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986)); *but c.f.*, *Yog v. Tex. S. Univ.*, No. H-08-3034, 2010 WL 4053706, at *2 (S.D. Tex. Oct. 14, 2010) (applying economic realities test to determine whether plaintiff was a volunteer or employee). None of the parties argued their case in light of this or any other test. Thus, ruling on this issue would require analysis of factors the parties have not addressed and would risk an incorrect decision because the parties have not attempted to create a record that is aimed at the appropriate legal standard. Ultimately though, the determination matters not. Even assuming an employer-employee relationship under Title VII, Noah's federal claims still fail.

    B.    Noah's Title VII Discrimination Claim

Noah first claims that she was discriminated against on the basis of race, in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-2 (2006).[1] Because she presents only circumstantial evidence to support her claim, the Court proceeds under the familiar

---

[1] The statute makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2 (2006).

*McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this rubric, Noah attempted to establish a prima facie case of discrimination by demonstrating that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action; and (4) . . . that other similarly situated employees [outside the protected class] were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004) (citation omitted). Because the parties do not dispute the first two elements, the Court's analysis will concentrate on the latter two.

        1.        Adverse Employment Action

It is axiomatic that a Title VII plaintiff must demonstrate that she suffered an adverse employment action. Here, Noah claims that she suffered the following adverse employment actions: (1) Daniel treated her with disrespect; (2) Noah did not receive the same training opportunities as a white trainee; (3) Noah was not compensated like the white trainee; and (4) Daniel terminated Noah's training and employment at Community Place. Pl.'s Mem. [89] at 3, 13.

According to the Fifth Circuit Court of Appeals, "Title VII was only designed to address 'ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (holding that adverse employment actions for the purposes of Title VII retaliation need not be as severe as in Title VII discrimination claims). Thus, "[a]n adverse employment action must be an 'ultimate employment decision' such as hiring, firing, promoting, demoting, compensating and granting leave." *Roberson v. Game Stop/Babbage's*,

5

152 F. App'x 356, 360 (5th Cir. 2005) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).

Noah's allegation that Daniel "treated her with condescension and disrespect," Pl.'s Mem. [89] at 13, does not establish an adverse employment action because, even if true, such acts "lack . . . consequence." *Mattern*, 104 F.3d at 708 (holding that verbal threats, reprimands, and warnings by employee's supervisor did not constitute adverse employment actions).

The training issue is perhaps a closer question, but generally "denying training to an employee is not an adverse employment action covered by Title VII." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (upholding district court's grant of summary judgment in race-discrimination case); *see also Roberson*, 152 F. App'x at 361 (quoting *Shackelford*, 190 F.3d at 407); *Martin v. Lennox Intern. Inc.*, 342 F. App'x 15, 18 (5th Cir. 2009) (disability-discrimination case). Even assuming Noah alleges an ultimate employment decision with respect to the training, the claim still fails for lack of a comparator, as discussed below.

Noah's termination and compensation claims, however, do relate to "ultimate employment decisions" as required to establish a prima facie case under Title VII. Although Defendants argue that Noah was not entitled to compensation and could not have been terminated because she was never actually employed, this argument falls short if, as mentioned previously, the Court assumes Noah was an employee. Thus, the Court's assumption of employer status will carry the case past this element of the prima facie stage without deciding the issue.

      2.  Similarly Situated Employees Were Treated Differently

The final element of Noah's prima facie case is met only if she demonstrates that she was treated differently than a similarly-situated employee outside the protected class. On this point,

Noah contends that Connie Key—a white female and Daniel's only other A.I.T. trainee—was treated more favorably because she was paid; given better training; and allowed to complete her training.² This element turns on whether Noah and Kay are indeed "similarly situated." *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

In the Fifth Circuit, "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee*, 574 F.3d at 260 (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). "[E]mployees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id.* (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)), nor are "[e]mployees . . . who work for different divisions of a company." *Id.* (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). "And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004); *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 237 (5th Cir. 2006) (plaintiff discharged for violating two safety protocols could not use comparator who only violated one safety protocol); *Dodge v. Hertz Corp.*, 124 F. App'x 242, 244 (5th Cir. 2005) (that plaintiff's and proffered comparator's acts were both "dishonest" is insufficient to make misconduct nearly identical); *Trotter v. BPB Am., Inc.*, 106 F. App'x 272, 276–77 (5th Cir. 2004) (misconduct of employees who fought with other employees was not nearly identical to plaintiff, who fought with union president).

---

²Noah also asserts that Key was treated more favorably by the Board, but the Board is not a party.

In other words, "[i]f the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 (quoting *Wallace*, 271 F.3d at 221 (emphasis in *Lee*)). Applying cases like *Lee*, the Court cannot find that Noah and Key were similarly situated—the two did not hold similar positions, nor did they engage in similar conduct.

Beginning with the compensation claim, Noah asserts that Key was compensated during the A.I.T. program whereas Noah was not. But Key began working at Community Place in 2002 as an administrative assistant. Defs.' Mot. Summ. J. [73] Ex. 4, Key Aff. ¶ 4. Key continued to work full-time as administrative assistant and completed her training "outside of her regular employment duties." *Id.* ¶¶ 7–8. Key swears that she was not paid wages for her training, *id.* ¶ 7, and her declaration is not disputed in the record.

Noah, on the other hand, performed only training-related activities while at Community Place. Although she claims Community Place hired her concurrently for a research job, she admittedly never performed it. She also contends that she expected to be paid through a grant from Johnson & Johnson "for which Community Place had recently applied," but that the training ended before the compensation from the grant was expected to begin. Pl.'s Mem. [89] at 4, 14; *id.*, Ex. C, Noah Dep. at 20–23. Noah presents no evidence that Key was paid from a grant or paid for anything other than her normal work-related duties as an administrative assistant. Finally, even if all else were equal, Noah offers no evidence that a researcher and an administrative assistant have similar duties or are in the same department. Thus, Noah and Key were not similarly situated with respect to compensation.

8

As for the termination of training and/or employment, Noah has not established that Key's conduct was "nearly identical" to hers. *Lee*, 574 F.3d at 260. She presented no evidence that Key ever failed to complete a task, while Noah admittedly was asked to re-accomplish several tasks. *See* Pl.'s Resp. [88] Ex. 3, Noah. Dep. 64–65, 71. Likewise, there is no evidence of employee complaints regarding Key. In fact, Noah failed to present evidence that Key—who completed her A.I.T. requirements and passed the licensure exam—committed any violations whatsoever. Consequently, Noah has not created a genuine issue of material fact as to disparate treatment.

Finally, the Court holds that the adequacy-of-training claim does not state an "ultimate employment action." But if it did, it still fails because Noah has not demonstrated that she and Key were similarly situated with respect to the training. According to Noah, Key's training was more in-depth. But the record is undisputed that training under the A.I.T. program was flexible and tailored to the participant's background knowledge. Key had worked at Community Place for four years before she participated in the A.I.T. program and was already familiar with its operations. Noah had no such experience at Community Place. The two were not similarly situated.

"To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination." *Davis v. Dall. Area Rapid Trans.*, 383 F.3d 309, 317 (5th Cir. 2004). Thus the analysis could end here. But for thoroughness sake, the Court summarily finds that Noah fails to meet her ultimate burden under *McDonnell Douglas*. Community Place met its burden of producing nondiscriminatory reasons for the employment action—Noah's failure to complete assigned tasks; complaints from other employees (including African-American workers); and Noah's refusal to perform tasks she deemed "lower level." *See*

9

*E.E.O.C. v. J.M. Huber Corp.*, 927 F.2d 1322, 1328–29 & n.23 (5th Cir. 1991) (holding that a defendant's burden is one of production). It was then incumbent upon Noah to "put forward evidence rebutting each of the nondiscriminatory reasons the employer articulate[d]." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). She did not, and she cannot prevail on her disparate-treatment claim.[3]

       C.      Noah's Title VII Hostile-Work-Environment Claim

Noah also asserts a Title VII claim for hostile work environment. To prevail on such a claim, Noah "must demonstrate that (1) she is a member of a protected class, (2) she suffered unwelcome harassment, (3) the harassment was based on race, (4) the harassment affected her job, and (5) the employer was responsible." *Lyles v. Tex. Alcohol Beverage Com'n*, 379 F. App'x 380, 384 (5th Cir. 2010) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). But "where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). As with Noah's discrimination claim, her membership in a protected class is not disputed. The Court's analysis will therefore focus on the remaining three elements. And because the evidence

---

[3]Although not addressed by the parties, the Court notes that Daniel initially agreed to train Noah and then terminated the arrangement some three months later. Such circumstances create "an inference that discrimination was not the employer's motive in terminating the employee." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)). Although not dispositive, and not necessary to rule for Defendants in this matter, the same-actor inference would mitigate against a finding of pretext because "it[] hardly mak[es] sense for an employer to hire employees from a group against which it bears racial animus and then turn around and fire them once they are on the job." *Hervey v. Miss. Dep't of Educ.*, No. 10-60096, 2010 WL 5129726, at *6 (5th Cir. Dec. 13, 2010) (citation omitted) (applying same-actor inference to affirm summary judgment for failure to demonstrate pretext).

on the second and fourth elements overlaps in this case, they are considered together.

           1.      Unwelcome Harassment Affecting a Term or Condition of Employment

In her responsive memorandum, Noah claims that she "found herself consistently belittled and disrespected not through overt confrontation, but through more subtle means. Daniel was harassing Noah by refusing to engage in the training program and subjecting Noah to disparate treatment and discrimination, including the refusal of compensation." Pl.'s Mem [89] at 22. "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Harris v Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). And "[t]o affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Roberts v. Unitrin Specialty Lines Ins. Co.*, No. 09-10350, 2010 WL 5186773, at *5 (5th Cir. Dec. 21, 2010) (quoting *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

Although Noah claims she was "constantly belittled," she admits she was never reprimanded by Daniel. Pl.'s Resp. [88] Ex. C, Noah Dep. 135:9–11. Similarly, Noah testified that she never heard Daniel make any discriminatory remarks. *Id.* at 136. She makes no claim that Daniel verbally or physically threatened her, and she admitted in her EEOC Charge that she "had no problems with Mrs. Daniel in November, December or January." Defs.' Mot. Summ. J. [73] Ex. 15, EEOC Documentation 1. Finally, the specific derogatory things Noah claims Daniel did—telling Noah she was not cut out for nursing home administration, sticking her finger in

Noah's face, calling Noah a liar, and belittling her—refer to a single isolated confrontation. Pl.'s Resp. [88], Ex. C, Noah Dep. 73-74;135.

Such conduct is not severe or pervasive enough to be actionable under Title VII. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) ("We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.") (internal quotations and citations omitted). "Although discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." *Id.* at 347–48 (internal quotations and citations omitted). Thus, Noah's claims of being belittled and disrespected through "subtle means" are not sufficiently severe or pervasive enough for any trier of fact to find in her favor.

> 2. Based on Race

Noah also fails to demonstrate that the conduct was based on race. The Fifth Circuit has held that "[a]ctionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'" *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citation omitted). While the defendant's alleged harassment need not be explicitly racial, it must have a "racial character or purpose to support a Title VII claim." *Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457, 464 (5th Cir. 2008) (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999).

Here, Noah plainly admits that Daniel did not use racial slurs toward her. Pl.'s Resp. [88] Ex. C, Noah Dep. 75:9–10. She also admits that she never saw any discriminatory behavior directed to anyone else at Community Place. *Id.* at 135:25–136:8. In fact, she testified that she was wholly unaware of the basis for Daniel's statements and actions, and had no basis for alleging that they were race-based. *Id.* at 135:20–24. Although she argues in her memorandum that race must have been the cause, "an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief." *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 858 (5th Cir. 2009) (upholding summary judgment for defendant where plaintiff failed to show her claims of humiliation "were connected in any way to her membership in a protected class"); *Lyles*, 379 F. App'x at 384 (upholding summary judgment for defendant in the absence of "objective evidence in the record to substantiate [the plaintiff's] opinion that [the defendant's] conduct was race-based").

Simply put, "[t]he actions that [Noah] cite[s] are not racial in character or purpose and would not reasonably permit the inference that they had a racial animus." *Wooten v. Fed. Exp. Corp.*, No. 3:04-CV-1196-D, 2007 WL 63609, at *22 (N.D. Tex. Jan 9, 2007). *Compare Felton*, 315 F.3d at 485 (applying Title VII test to Plaintiff's hostile-work-environment claim under § 1981 and concluding that, because Plaintiff did not allege racial "intimidation, ridicule, or insults within the actionable time period," he could not survive summary judgment), *with Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (abrogated on other grounds) (holding that appellants who presented evidence that, for years, they endured "comparisons to slaves and monkeys, derisive remarks regarding their African heritage, patently offensive remarks regarding the hair of African-Americans, and conversations in which coworker and supervisor

13

used the [N-]word" created a fact issue as to their hostile-work-environment claim). Noah cannot survive summary judgment on her hostile-work-environment claim.

D.    Noah's State-Law Claims

Having eliminated all of Noah's federal claims, the Court now turns to Noah's state-law claims against Daniel and Community Place. District courts have discretion not to exercise supplemental jurisdiction over "a claim" when all claims over which the court had original jurisdiction have been dismissed. 42 U.S.C. § 1367(c)(3) (2006).[4] But while the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor absolute." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)). Rather, the Court must consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Batiste*, 179 F.3d at 227 (citations omitted).

In this case, the Court concludes that the exercise of supplemental jurisdiction over Noah's IIED claims against Daniel and Community Place is proper. Although no federal claims remain, IIED claims raise issues that are neither novel nor difficult. § 1367(c)(1); *see Batiste*, 179 F.3d at 227 (reversing refusal to exercise supplemental jurisdiction in part because issues

---

[4] 42 U.S.C. § 1367(c) reads:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

were not complex).  Likewise, the Court is familiar with the issues, having already considered the matter in a Rule 12(b)(6) posture and again at the summary judgment stage.  *Id.* at 228 (noting trial court's familiarity with the issues).  Finally, dismissing these claims without prejudice would result in unnecessary state-court proceedings.

Having accepted supplemental jurisdiction, the Court readily concludes that Defendants are entitled to summary judgment on Noah's IIED claims.  "[M]eeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi," *Riley v. F.A. Richard & Assocs., Inc.*, 16 So. 3d 708, 719 (Miss. Ct. App. 2009) (citations omitted), and such claims "will not ordinarily lie for mere employment disputes."  *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 316 (5th Cir. 2003) (quoting *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001).  "[O]nly where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" will courts impose liability.  *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (applying Mississippi law).  Finally, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not actionable in Mississippi.  *Jenkins v. City of Grenada, Miss.*, 813 F. Supp 443, 447 (N.D. Miss. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d. (1965)); *see also Davis v. AltaCare Corp.*, No. 2:05cv2027, 2007 WL 2026438, at *8 (S.D. Miss. July 9, 2007).  The facts, when viewed in a light most favorable to Noah, present nothing more than a garden variety employment dispute for which Mississippi law recognizes no cause of action.  Defendants' Motion for Summary Judgment [73] is granted.

As for Noah's remaining state-law claims against Community Place, the Court declines supplemental jurisdiction in light of the principles of economy, convenience, fairness, and

comity.  Noah asserts various negligence claims related to the termination of her training and employment.  Community Place responded that such claims are barred by the exclusivity provision of the Mississippi Worker's Compensation Act.  Miss. Code Ann. § 71-3-9 (Rev. 2000).  Noah concedes as much if she was an employee, but rightfully observes Community Place's steadfast position that she was not its employee.  Noah argues that if, as Community Place contends, she was not its employee, then her negligence claims survive because there is no statutory bar.  Community Place's reply switches direction and contends in a cursory way that, because there was no discrimination or employment status, there can be no negligence.  Because it was raised for the first time in reply, this argument would not generally be considered. *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008).  Even if considered, the argument fails to fully account for the full scope of Noah's claims—at least as she describes them—because she also *appears* to assert claims that are not derivative of the dismissed federal claims.

      Looking to the factors for exercising supplemental jurisdiction, the Court first notes that Noah's state-law negligence claims could raise novel issues of Mississippi law.  Application of the exclusivity provision depends on employee status, which in this context must be decided under Mississippi substantive law.  Neither party identifies the proper legal standard for this decision, and neither party cites any authority whatsoever.  And application of that yet-to-be-identified state-law standard to the seemingly unique facts of this case could produce novel and complex issues.  *C.f., Batiste*, 179 F.3d at 227.  Such matters are best addressed in state court.

      Moreover, the case is not so far along that it would be unfair to decline supplemental jurisdiction.  The matter is not set for trial, and the negligence claims have not been well developed before this Court.  In fact, additional briefing on the employee-status question under

Mississippi law would be required before ruling.  Similarly, the parties would need to address whether Noah's negligence claims are truly derivative of her discrimination claim as Community Place suggests—though without supporting authority or analysis.  *Cf. Batiste*, 179 F.3d at 227–28 (concluding that district court abused its discretion in not retaining jurisdiction where case had been pending for nearly three years, was scheduled to begin within the month, and district court had intimate knowledge of pertinent facts).  Noah's remaining state-law claims are therefore dismissed without prejudice.

IV.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment [73] is granted as to Noah's federal claims and her claim of intentional infliction of emotional distress.  Daniel is therefore dismissed from this case.  But because the Court declines to exercise supplemental jurisdiction over Noah's remaining state-law claims, the balance of the motion is denied, and those claims are dismissed without prejudice.  Defendants' remaining Motion in Limine [95] and Motion to Strike [100] are moot.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 24th day of January, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE